| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| RAMSEY COUNTY | SECOND JUDICIAL DISTRICT |
| | CASE TYPE: QUIET TITLE |

Bradley A Cartier and Mun-Peng Tan;
Heather L. Welk and Dean J. Welk;
Walter G. Krawza; Shane B. Ulgem;
and Daniel Lipp and Milissa Lipp;

        Plaintiffs,

v.

Well Fargo Bank, N.A.; Well Fargo
Home Mortgage, Inc.; Wells Fargo
Home Mortgage, Inc. d/b/a America's
Servicing Company; U. S. Bank
National Association, as Trustee;
MERSCORP, Inc.; Mortgage
Electronic Registration Systems, Inc.;
and Reiter & Schiller, P.A.;

        Defendants.

**SUMMONS**

Civil No: _____

PLAINTIFFS TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED and required to serve upon the attorney for

Plaintiffs an Answer to the attached Complaint within twenty (20) days after service of this

Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default

will be taken against you for the relief demanded in the Complaint.

1

WF000001

Alternative dispute resolution is available pursuant to the Minnesota General Rules of

Practice.  You are advised to refer to the Minnesota General Rules of Practice for further

information about this process.

BUTLER LIBERTY LAW, LLC

Dated: 2/4/11

William B. Butler (227912)
4100 Multifoods Tower
33 South Sixth Street
Minneapolis, Minnesota  55402
(612) 630-5177

2

WF000002

STATE OF MINNESOTA

RAMSEY COUNTY

DISTRICT COURT

SECOND JUDICIAL DISTRICT

CASE TYPE:  QUIET TITLE

---

Bradley A Cartier and Mun-Peng Tan;
Heather L. Welk and Dean J. Welk;
Walter G. Krawza; Shane B. Ulgem;
and Daniel Lipp and Milissa Lipp;

     Plaintiffs,

v.

Wells Fargo Bank, N.A.; Wells Fargo
Home Mortgage, Inc.; Wells Fargo
Home Mortgage, Inc. d/b/a America's
Servicing Company; U. S. Bank
National Association, as Trustee;
MERSCORP,     Inc.;     Mortgage
Electronic Registration Systems, Inc.;
and Reiter & Schiller, P.A.;

     Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Civil No: _____

---

Plaintiffs, for their Complaint against Defendants, state and allege as follows:

## BACKGROUND

1.    All Plaintiffs are Minnesota homeowners who allege that Defendants assert

invalid and voidable Mortgages ("Mortgages") against Plaintiffs' homes.

WF000003

2. All Defendants have asserted or claim securitized mortgage lien rights by or through Wells Fargo, N.A. and Wells Fargo, N.A.-related and controlled entities.

3. Plaintiffs seek to quiet title in their homes and compel Defendants to prove that Defendants have valid and clear legal title to Plaintiffs' original Original Notes ("Original Notes").

4. All named Plaintiffs executed Original Notes and/or Mortgages in favor of an entity different from Defendants who now claim the legal right to foreclose on Plaintiffs' homes.

5. Many of the named Plaintiffs have demanded that Defendants provide proof of ownership and evidence of the chain of title to the Original Notes and Mortgages.

6. Defendants have refused to comply with Plaintiffs' demands and further repeatedly refused to abide by federal laws and regulations relating to disclosure of mortgage loan ownership ("Truth in Lending Act") and mortgage loan modification ("Home Affordable Modification Program") as well as other federal and state laws and regulations governing securitized mortgage loans.

7. Defendants do not have valid, clear legal title to Plaintiffs' Original Notes.

8. Defendants are not holders in due course of Plaintiffs' Original Notes.

    A. No named Defendant paid any value for Plaintiffs' Original Notes;

    B. No named Defendant holds Plaintiffs' Original Notes in good faith; and

    C. No named Defendant holds Plaintiffs' Original Notes without notice of any claims or defenses to the enforcement of the Original Notes.

WF000004

9.     Upon information and belief, Defendants do not have actual physical possession of Plaintiffs' Original Notes.

10.     Upon information and belief, although Defendants assert legal title to the Original Notes and Mortgages, separate, distinct and unrelated entities own all of the rights to the proceeds of the Original Notes and Mortgages.

11.     Defendants do not have valid, clear legal title to the Original Notes. Defendants therefore cannot assert rights to payment on the Original Notes and cannot assert the right of foreclosure under the Mortgages.  The Mortgages are security for the Original Notes and Defendants have no direct claim to proceeds due on the Original Notes.  Because Defendants have no direct right to receive payments due on the Original Notes, Defendants cannot exercise foreclosure rights in the Mortgages.

12.     Upon information and belief, Defendants and others securitized and sold Plaintiffs' Original Notes into a "pooling and servicing agreement" ("PSA"), in which at least 100 percent of the present value of the total payments due on Plaintiffs' Original Notes were sold to third-party purchasers ("Certificate Holders") of "mortgage-backed securities" ("MBS").

13.     All of the Plaintiffs have loans in which Wells Fargo, N.A. and/or Wells Fargo, N.A.-related or controlled entities have an operational role as "Depositor," "Servicer," "Responsible  Party,"  "Loan  Performance  Advisor,"  "Trustee,"  "Securities Administrator," and/or "Custodian."

3

WF000005

14.   Upon information and belief, Defendants and others irrevocably sold and/or transferred all of the rights to receive 100 percent of the payments due on Plaintiffs' Original Notes to bankruptcy-remote entities and trusts created by the PSA, including but not limited to "Real Estate Mortgage Investment Conduits" ("REMIC").

15.   Defendants' securitization of Plaintiffs' Original Notes permanently and irrevocably separated the "value" of the Original Notes from the actual, physical Original Notes.

16.   Due to Defendants' actions, Plaintiffs' Original Notes are not unconditionally enforceable negotiable instruments.

17.   Because Plaintiffs' Original Notes are not unconditionally enforceable negotiable instruments, Defendants cannot assert the right to foreclose on the Mortgages.

18.   Upon information and belief, Defendants are aware of Plaintiffs' defenses to enforcement of the Original Notes, including but not limited to issues relating to Defendants' defective title to the Original Notes and Mortgages, failed and/or defective caretaking of the Original Notes and Mortgages, and third-party payments to Defendants and MBS holders which, if disclosed to Plaintiffs, would allow Plaintiffs to meaningfully negotiate any alleged debt owed to Defendants.

19.   Upon information and belief, Defendants are aware of Plaintiffs' defenses and are abusing Minnesota's foreclosure by advertisement process to avoid exposure of Defendants' flawed legal position and flawed title to the Original Notes and Mortgages.

WF000006

20.   At all times herein, Reiter & Schiller, P.A. acted on behalf of, and with the knowledge and approval of, Wells Fargo, N.A.

**PARTIES**

21.   Plaintiffs Bradley A Cartier and Mun-Peng Tan, husband and wife, reside at 2441 Iverson Ave N., Forest Lake, MN 55025. Plaintiffs Cartier executed an original promissory note on July 21, 2006, and also executed a mortgage in favor of Wells Fargo Bank, N.A. on July 21, 2006. The property is located in Washington County, Minnesota ("Cartier Property"). The legal description of the property is as follows:

> FOREST GROVE HEIGHTS Lot 3 Block 2 SubdivisionCd
> 81230

22.   Plaintiffs Bradley A Cartier and Mun-Peng Tan, husband and wife, reside at 2441 Iverson Ave N., Forest Lake, MN 55025. Plaintiffs Cartier executed an original promissory note on February 28, 2008, and also executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. on February 28, 2008. The property is located in Hennepin County, Minnesota ("Cartier Property 2"). The legal description of the property is as follows:

> All of Lot 10 and Lot 11, except the South 40 feet thereof,
> Block 2, Keith, Anderson & Farrier's Subdivision of Lots A and
> B of Babbitt's Outlots, Hennepin County, Minnesota

23.   Plaintiffs Heather L. Welk and Dean J. Welk, wife and husband, reside at P.O. Box 9188, North St. Paul, MN 55109. Plaintiffs Welk executed an original promissory note on February 27, 2004, and also executed a mortgage in favor of Mortgage Electronic

5

WF000007

Registration Systems, Inc. a Deleware corporation as nominee for Mortgages Unlimited, Inc., a Minnesota corporation on February 27, 2004. The property is located in Ramsey County, Minnesota ("Welk Property").   The legal description of the property is as follows:

> The South 160.7 feet of the Westerly 133.5 feet of the Easterly 261.22 feet of the South Half of the Southeast Quarter of the Southwest Quarter of the Northeast Quarter of Section 14, Township 29, Range 22

24.   Plaintiff Walter G. Krawza, a single person, resides at 1698 Woodgate Lane, Eagan, MN 55122. Plaintiff Krawza executed an original promissory note on August 6, 2007, and also executed a mortgage in favor of Homeservices Lending, LLC Series A, a Delaware limited liability company d/b/a Edina Reatlty Mortgage on August 6, 2007. The property is located in Dakota County, Minnesota ("Krawza Property").   The legal description of the property is as follows:

> LOT 20, BLOCK 1, WOODGATE 3RD ADDITION, DAKOTA COUNTY, MINNESOTA

25.   Plaintiff Shane B. Ulgem, a single person, resides at 10515 Kimbro Ave S., Cottage Grove, MN 55016. Plaintiff Uglem executed an original promissory note on July 26, 20063, and also executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. a Deleware corporation as nominee for Mortgage Lenders Network USA, Inc., a Delaware Corporation on July 26, 20063. The property is located in Washington County, Minnesota ("Uglem Property").   The legal description of the property is as follows:

6

That part of the Northwest 1/4 of the Southeast 1/4 of Section 26, Township 27 North, Range 21 West, described as follows to-wit: Commencing at a point on the North line of said Northwest 1/4 of Southeast 1/4 2487 feet West of the East quarter corner of said Section 26, said point being in the center of the Cottage Grove Road as now established, thence South 4 degrees 33 minutes East along the center of said road a distance of 243.8 feet to the point of beginning of this tract, thence South 62 degrees 39 minutes East parallel to old Highway No. 61 for a distance of 190 feet; thence South 4 degrees 33 minutes East parallel with Cottage Grove Road a distance of 250 feet to the Northerly right-of-way of old Highway No. 61, thence North 62 degrees 39 minutes West along said right-of-way line a distance of 190 feet to the center of the Cottage Grove Road; thence North 4 degrees 33 minutes West along the center of said road a distance of 250 feet to the point of beginning. EXCEPT that part lying West of a line 40 feet East of and parallel with the following described line: Commencing at the East quarter corner of said Section 26; thence on an assumed bearing of South 89 degrees 16 minutes 14 seconds West along the North line of the Southeast quarter of said Section 26, a distance of 2487.21 feet to the point of beginning of the line to be described; thence South 6 degrees 11 minutes 13 seconds East 534.58 feet and there terminating, according to the United States Government Survey thereof and situate in Washington County, Minnesota

26.   Plaintiffs Daniel Lipp and Milissa Lipp, husband and wife, reside at 664 Asbury Street, St. Paul, MN 55104-1826. Plaintiffs Lipp executed an original promissory note on August 6, 2006, and also executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. on August 6, 2006. The property is located in Ramsey County, Minnesota ("Lipp Property"). The legal description of the property is as follows:

Lot 17, Block 5, The Hamline Syndicate Addition No. 1 to St. Paul, Ramsey County, MN

7

WF000009

27.     Wells Fargo Bank, N.A. ("WF-NA").   WF-NA is a national bank, whose charter is approved by the Office of the Comptroller of the Currency.  Its headquarters are located at 101 North Phillips Avenue, Sioux Falls, SD 57104.

28.     Wells Fargo Home Mortgage, Inc., ("WF Home Mortgage") is a wholly owned subsidiary of WF-NA.  It was acquired by WF-NA in May 2004.  Its headquarters are located at 405 Southwest 5th Street, Des Moines, IA 50309.  Wells Fargo Home Mortgage, Inc., d/b/a America's Servicing Company, ("ASC") is a division of WF Home Mortgage that services loans for other investors under the America's Servicing Company name.

29.     U. S. Bank National Association, ("USB-NA") as Trustee.  USB-NA is a national bank, whose charter is approved by the Office of the Comptroller of the Currency.  Its headquarters are located at 425 Walnut Street, Cincinnati, Ohio 45202.

30.     MERSCORP, Inc., ("MERSCORP") is a Delaware corporation, registered to do business in the State of Minnesota.  MERSCORP is the record keeper and record custodian for the Mortgage Electronic Registration Service, Inc., system which has effected and recorded the transfer of mortgages for one or more of Plaintiffs' properties.  Its Minnesota registered agent is CT Corporation, located at 100 South 5th Street #1075, Minneapolis, Minnesota 55402.

31.     Mortgage Electronic Registration Service, Inc., ("MERS") is a Delaware corporation with principal place of business in Virginia.  MERS is not registered to do business in Minnesota.

8

WF000010

32.     Reiter & Schiller, P.A., ("Law Firm") is a law firm located at The Academy Professional Building, 25 North Dale Street, St. Paul, MN 55102. Law Firm is WF-NA's agent and is WF-NA's agent for purposes of enforcing falsely declared defaults on Plaintiffs' Original Notes and/or wrongfully foreclosing on Plaintiffs' homes.

33.     Upon information and belief, all Defendants transact business within Ramsey County.

34.     Defendant Wells-NA falsely claims a mortgagee's interest in the Cartier Property through "Wells Fargo Bank, N.A. as PSA servicer."

35.     Defendant Wells-NA falsely claims a mortgagee's interest in the Cartier Property 2 through "MERS and Wells Fargo Bank, N.A."

36.     Defendant Wells-NA falsely claims a mortgagee's interest in the Welk Property through "Wells Fargo Bank, N.A."

37.     Defendant Wells-NA falsely claims a mortgagee's interest in the Krawza Property through "Wells Fargo Bank, N.A."

38.     Defendant Wells-NA falsely claims a mortgagee's interest in the Uglem Property through "U.S. Bank National Association as Trustee By Residential Funding Company, LLC FKA Residential Funding Corporation Attorney in Fact."

39.     Defendant Wells-NA falsely claims a mortgagee's interest in the Lipp Property through "Wells Fargo Bank, National Association, as Trustee for the holders of the First Franklin Mortgage Loan Trust 2006-FF15 Mortgage Pass-through Certificates, Series 2006-FF15."

9

WF000011

## COUNT I
### (The Mortgages are Invalid and Unenforceable)

40.    Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

41.    Defendants do not have possession of the Original Notes.

42.    All value of the Original Notes has been sold to third parties.

43.    Defendants have not paid value for the Original Notes, do not hold the Original Notes in good faith and are aware of numerous substantive and procedural defenses to enforcement of the Original Notes, including but not limited to violations of federal and state laws governing securitized Mortgages.

44.    Because Defendants do not have physical possession of the Original Notes and do not have valid, clear legal title to the Original Notes, Defendants cannot exercise the legal right to foreclose the Mortgages.

## COUNT II
### (Slander of Title)

45.    Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

46.    Defendants publicly recorded mortgage deeds in the name of a nominee, which did not have legal title to either the promissory notes or the Mortgages.

47.    Defendants sold at least one hundred percent (100%) of the value of the Original Notes to investors.

10

WF000012

48.     The Original Notes are non-negotiable.

49.     In order to assert the right to foreclose, an entity must hold clear legal title to both the original promissory note and the mortgage.

50.     Defendants published Notices of Foreclosure purporting that they were holders in due course of Plaintiffs' Original Notes, falsely indicating that they are entitled to enforce Plaintiffs' mortgage loans and foreclose and take possession of Plaintiffs' home.

51.     Because Defendants do not have clean legal title to the Original Notes, Defendants' publication was malicious.

52.     As a result of Defendants' publication of the false statements, Plaintiffs suffered special damages, including but not limited to payment on non-negotiable Original Notes.

**COUNT III**
**(Defendants are Not Holders in Due Course of the Original Notes)**

53.     Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

54.     A holder of a negotiable instrument, such as a promissory note, is a holder in due course if the holder takes an instrument (1) for value, (2) in good faith, and (3) with no notice of defenses or claims against the instrument.

55.     Defendants did not take Plaintiffs' Original Notes for value.

56.     Defendants did not take Plaintiffs' Original Notes in good faith.

11

WF000013

57.   Defendants did not hold Plaintiffs' Original Notes without notice of any defenses or claims.

58.   As a result, Defendants are not holders in due course of Plaintiffs' Original Notes and hold the Original Notes subject to Plaintiffs' claims and defenses.

## COUNT IV
### (Due Process Violation)

59.   Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

60.   Article 1, Section 7 of the Minnesota Constitution provides that no person shall "be deprived of life, liberty or property without due process of law."

61.   Foreclosure of Plaintiffs' home, by advertisement and through a sale conducted by Minnesota county sheriffs, violates the Minnesota Constitution's due process clause.

62.   The securitization of mortgage loans make it difficult, if not impossible, for Plaintiffs to determine who actually owns or holds the promissory note and mortgage and thus renders the process of foreclosure by advertisement in these situations irregular.

63.   Irregular foreclosures by advertisement violate the due process protections afforded Plaintiffs by the Minnesota Constitution.

## COUNT V
### (Defendants Do Not have Legal Standing to Foreclose Mortgages)

64.   Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

WF000014

65.     Defendants, who are not holders in due course of Plaintiffs' Original Notes or Mortgages, do not have a material stake in the enforcement of Plaintiffs' mortgage loans.

66.     Because Defendants do not have a material stake in the enforcement of Plaintiffs' mortgage loans, Defendants do not have standing to enforce the Original Notes and Mortgages.

## COUNT VI
### (Defendants are Not Real Parties in Interest)

67.     Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

68.     Defendants are not holders in due course of the Original Notes or Mortgages.

69.     Because Defendants are not the holders in due course, they do not have the legal right, under the law, to enforce the Original Notes and Mortgages.

70.     Defendants, who are not entitled to enforce the Original Notes and Mortgages, will receive no benefit from the foreclosure of Plaintiffs' home.

71.     Because Defendants do not have the legal right to enforce the Original Notes and Mortgages and will not receive a benefit from the foreclosure of Plaintiffs' homes, Defendants are not the real parties in interest entitled to foreclose Plaintiffs' homes.

## COUNT VII
### (Fraud)

72.     Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

13

WF000015

73.     Defendants have falsely represented to Plaintiffs that they are holders in due course of Plaintiffs' Original Notes and Mortgages, that they are the real parties in interest entitled to enforce the Original Notes, and that they have legal standing to pursue a foreclosure remedy against Plaintiffs.

74.     Defendants knew, or should have known, that the representations were false.

75.     Defendants, with their false representations, intended to induce Plaintiffs to forebear from asserting their legal rights to challenge foreclosure.

76.     As a result of Defendants' false representations, Plaintiffs did not assert their legal rights earlier and now have clouded title or face the loss of their home.

77.     As a result of Plaintiffs' inability to meet the obligations under the Original Notes and Mortgages, Defendants have indicated an intent to foreclose Plaintiffs' Mortgages.

78.     Defendants' foreclosure of Plaintiffs' Mortgages, will cause Plaintiffs to suffer pecuniary damages in the form of the loss of the equity in their home, the costs to secure new housing, and the costs associated with the damage to their credit histories caused by foreclosure.

## COUNT VIII
### (Negligent Misrepresentation)

79.     Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

14

WF000016

80.    As sophisticated lending institutions, Defendants owed Plaintiffs a duty of reasonable care in conveying information relevant to Plaintiffs' decisions to assert their legal right to challenge Defendants' status as legal owners and holders in due course entitled to enforce the Original Notes and Mortgages.

81.    On or about October 13, 2008, Defendants' agents met with representatives of United States Treasury and the Federal Reserve and agreed to execute a "plan" ("Bailout Plan") that had the effect of fundamentally altering Plaintiffs' rights and obligations under the Original Notes and Mortgages.  Present at this meeting were:  Treasury Secretary Henry Paulson, Federal Reserve Chairman Ben Bernanke, Federal Deposit Insurance Corporation Chairwoman Sheila Bair, Citigroup Chief Executive Officer Vikram Pandit, JPMorgan Chase Chief Executive Officer Jamie Dimon, Wells Fargo Chairman of the Board Richard Kovacevich, Merrill Lynch Chief Executive Officer John Thain, Bank of America Chief Executive Officer Ken Lewis, Morgan Stanley Chief Executive Officer John Mack, Goldman Sachs Chief Executive Lloyd Blankfein, Bank of New York President Robert Kelly, and State Street Bank Chief Executive Officer Ronald Logue.

82.    At the October 13, 2008 meeting, Defendants' agents agreed to execute and publicly support (through "CEO Talking Points") a Bailout Plan in which select creditors of Plaintiffs' PSAs, including but not limited to Goldman Sachs and foreign banks, would receive payments in satisfaction of their MBS investment in Plaintiffs' PSAs.  From October 13, 2008, to the present, the Federal Reserve System has implemented this

WF000017

Bailout Plan by printing dollars to satisfy Plaintiffs' PSA creditors, the unsecured MBS Certificate Holders.

83.     At the October 13, 2008 meeting, Defendants' agents executed a "Major Financial Institution Participation Commitment" in which they agreed to the terms of a "TARP Capital Purchase Program" which, as implemented, has satisfied Plaintiffs PSA creditors and at the same time allowed Defendants to foreclose on the security for Plaintiffs' obligations to the PSA, Plaintiffs' homes.

84.     Defendants and their agents know or should have known that a direct and proximate result of the Bailout Plan has the effect of partially or wholly satisfying Plaintiffs' payment obligations to their respective PSAs.

85.     Defendants and their agents have agreed to participate in a Bailout Plan that has fundamentally altered Plaintiffs' rights and defenses to the Original Notes and Mortgages. Defendants' Bailout Plan has partially or wholly satisfied Plaintiffs' payment obligations to their respective PSAs and Defendants have actively concealed and misrepresented this fact in dealing with the Plaintiffs.

86.     The Bailout Plan further gives rise to numerous substantive defenses to the Original Notes and Mortgages. Defendants breached their duty to Plaintiffs by actively concealing and misrepresenting their legal position in dealing with Plaintiffs, including representing that Defendants were legal owners and holders in due course of the Original Notes and were legally entitled to enforce the Original Notes and foreclose the Mortgages executed by Plaintiffs without contest from Plaintiffs.

WF000018

87.     Plaintiffs reasonably relied on misrepresentations by Defendants, sophisticated lenders, in deciding to forebear from asserting their legal rights to challenge Defendants' ability to enforce the Original Notes and foreclose the Mortgages, and this reliance is the proximate cause of Plaintiffs' damages.

88.     As a result of Defendants' misrepresentations, Plaintiffs have suffered damages and will continue to suffer damages including the foreclosure of their Mortgages and loss of their homes.

### COUNT IX
### (Unjust Enrichment)

89.     Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

90.     Plaintiffs conferred a financial benefit on the Defendants in the form of payments made to Defendants with the understanding that Defendants held legal title to and were holders in due course of Plaintiffs' Original Notes.

91.     Defendants knowingly accepted the financial benefit from Plaintiffs.

92.     Defendants' acceptance of payments from Plaintiffs is inequitable.

### COUNT X
### (Declaratory Judgment – Original Notes are Void as Negotiable Instruments)

93.     Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

17

WF000019

94.    Defendants and their agents have sold 100% of the values of Plaintiffs' Original Notes to third parties.

95.    As a result of the securitization of Plaintiffs' Original Notes, the Original Notes are non-negotiable.

96.    Because Defendants are not holders in due course and hold non-negotiable instruments, Defendants must prove what amounts, if any, Plaintiffs owe on the Original Notes.

97.    Defendants, however, assert the right to foreclose the Mortgages, thus a genuine controversy exists regarding Defendants' right to foreclose Plaintiffs' Mortgages. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment under the Minnesota Declaratory Judgment Act, Minn. Stat. § 551.01 et seq.

## COUNT XI
### (Equitable Estoppel)

98.    Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

99.    Defendants induced Plaintiffs to forebear from pursuing their legal right to challenge Defendants' legal standing to foreclose on their home by representing that they held clear valid title to Plaintiffs' Original Notes.

100.    Plaintiffs reasonably relied on these representations.

18

WF000020

101.    If Defendants are not precluded from foreclosing on Plaintiffs' homes and the

Mortgages recovered, Plaintiffs will suffer irreparable harm.

## COUNT XII
### (Qui Tam—Private Attorney General Enforcement of
### Minn. Stat. §§ 357.18, 508.82, 508A.82)

102.    Plaintiffs incorporate each and every factual and legal allegation contained in

this Complaint.

103.    Minnesota Statute § 8.31, subdivision 3a, allows a private party to stand in the

place of the Minnesota Attorney General to enforce laws prohibiting "unfair,

discriminatory, and other unlawful practices in business, commerce, or trade," Minn. Stat.

§ 8.31, subd. 1.

104.    Defendants did not execute assignments of Mortgages when executing

assignments of interests in Plaintiffs' Original Notes.

105.    The failure to execute assignments of the Mortgages with the Original Notes

made it unnecessary for the transaction to be recorded in the counties in which Plaintiffs'

properties are located.

106.    The fees for recording assignments of mortgages are contained within

Minnesota Statutes §§ 357.18, 508.82, 508A.82.

107.    Because Defendants did not execute assignments of the Mortgages, Defendants

did not record the transfers of the mortgage loans, Minnesota counties, and Minnesota

WF000021

citizens, were deprived of thousands of dollars of recording fees due under Minnesota Statutes §§ 357.18, 508.82, 508A.82.

108.    Defendants' securitization of mortgage loans thus unfairly deprived Minnesota counties and their citizens of money they should have received in the assignment of mortgage loans.

109.    Plaintiffs' enforcement of Minnesota Statutes §§ 357.18, 508.82, 508A.82 in the place of the Minnesota Attorney General benefits the public.

## COUNT XIII
### (Third-Party Beneficiary)

110.    Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

111.    Certificate Holders were paid, pursuant to agreements with the federal government, for some or all of their losses relating to losses on PSAs containing Plaintiffs' Original Notes.

112.    As intended or unintended third-party beneficiaries to the agreements between Defendants and the Federal Government, Plaintiffs are entitled to have their obligations under their Original Note reduced by a percentage equal to the payments made by the federal government to the Certificate Holders.

## COUNT XIV
### (Accounting)

WF000022

113.    Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

114.    Plaintiffs' Original Notes are contained within PSAs that are filed with the Federal Securities and Exchange Commission, which required detailed financial reports and accounting.

115.    The PSAs administered millions of dollars of payments made to Certificate Holders.

116.    Plaintiffs demand an accounting to determine the amount of debt owed, if any, to the PSA and Certificate Holders.

## COUNT XV
### (Demand to Exhibit the Original Note)

117.    Plaintiffs incorporate each and every factual and legal allegation contained in this Complaint.

118.    Defendants' demand for payment a notice of default constitutes presentment of the Original Notes.

119.    Defendants' demand for payment and notice of default requires possession of and valid legal title to Plaintiffs' Original Notes.

120.    Plaintiffs have in the past and hereby demand that Defendants exhibit the Original Notes and provide evidence of valid legal title to the Original Notes.

121.    Defendants' failure to exhibit the Original Notes renders the presentment invalid, and Plaintiffs are not obligated to satisfy the payment obligations.

WF000023

## COUNT XVI
### (Discharge of Obligation)

122.     Plaintiffs incorporate each and every factual and legal allegation contained in

this Complaint.

123.     Plaintiffs' payment obligations due on the Original Notes have been discharged

due to payments made by third parties, including but not limited to private insurers and

government agencies.

124.     Defendants know or have reason to know of the third-party payments that have

been made to Defendants and to the MBS Certificate holders who purchased the right to

receive payments due on the obligation represented by Plaintiffs' Original Notes.


### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seeks judgment:

A.     Determining that they are the owners of the premises of which they are in

possession;

B.     Determining that Defendants have no estate, interest, or lien on the premises;

C.     Permanently enjoining Defendants from failing to record assignments of

securitized mortgage loans and demanding Defendants to pay all applicable filing fees;

D.     Determining that Defendants failed to pay appropriate filing fees and ordering

payment to the affected counties;

WF000024

E.   Declaring that Plaintiffs' Original Notes are void negotiable instruments and any alleged debt owed is subject to Plaintiffs' claims and defenses;

F.   Return of all sums paid to Defendants and their predecessors in interest;

G.   Plaintiffs' attorney fees and costs of suit pursuant to Minn. Stat. § 8.31; and

H.   Such other and further relief as the Court deems just and equitable.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL.**

BUTLER LIBERTY LAW, LLC

Dated:  February 4, 2011

William B. Butler (227912)
4100 Multifoods Tower
33 South Sixth Street
Minneapolis, Minnesota  55402
(612) 630-5177

ATTORNEY FOR PLAINTIFFS

**ACKNOWLEDGMENT**

The undersigned hereby acknowledges that the Court, pursuant to Minnesota Statutes, section 549.211, may award costs, disbursements and reasonable attorney and witness fees to the opposing parties in this litigation if the Court should find that the undersigned acted in bad faith; asserted a claim or defense that is frivolous and that is costly to the other party; asserted an unfounded position solely to delay the ordinary course of proceedings or to harass; or committed a fraud upon the Court.

23

WF000025

William B. Butler (227912)

WF000026